Jackie WARD, Plaintiff,

v.

ESTALEIRO ITAJAI S/A, A Metalnave Company, et al., Defendants.

Case No. 05–61821–CIV.

United States District Court,
S.D. Florida.

March 31, 2008.

Andrew W. Mychalowych, Meghan Cassidy, Haliw Siciliano & Mychalowych, Timothy R. Van Dusen, Lindsay James, Siciliano Mychalowych Van Dusen & Feul PLC, Farmington Hills, MI, Marc Jonathan Gottlieb, Akerman Senterfitt & Eidson, Fort Lauderdale, FL, for Plaintiff.

Thomas Meeks, Carlton Fields, Matthew Thomas Davidson, Zuckerman Spaeder LLP, Miami, FL, for Defendants.

## ORDER

WILLIAM J. ZLOCH, District Judge.

THIS MATTER is before the Court upon Defendants' Motion To Reconsider Or Stay The Effect Of The Court's Order Allowing Financial Worth Discovery (DE 190). The Court has carefully reviewed said Motion and the entire court file and is otherwise fully advised in the premises.

### I.

Plaintiff entered into negotiations with Defendants for the construction of a new luxury motor yacht to replace her present one. The vessel was to be crafted to Plaintiff's precise specifications, and the terms of the construction, sale, and purchase of the yacht were governed by the Vessel Construction Agreement. DE 78, Ex. B (hereinafter "Agreement"). After the time set for construction to begin, but before the completion date set by the Agreement, the Parties' relationship broke down and Plaintiff terminated the contract. Plaintiff alleges that she did so in exercise of her rights under the Agreement, be-

cause Defendant Estaleiro failed to meet certain construction benchmarks and was therefore in default. Thereafter, Plaintiff initiated this action, asserting claims for breach of contract and fraud in the inducement against Estaleiro and two of its individual employees, Francisco Wlasek and Paulo Rolim. The basis of Plaintiff's fraud claim is her allegation that Defendants never had the means, and thus, the intention, to construct her vessel, but negotiated with her nonetheless. With her fraud claim, Plaintiff has included a prayer for punitive damages. It is this relief that gives rise to the instant Motion.

In an effort to discover financial worth information related to her prayer for punitive damages, Plaintiff propounded Interrogatories and Requests To Produce to Defendants Wlasek and Rolim. Defendants moved for a protective order, arguing that Florida Statutes § 768.72(1) requires that before Plaintiff may engage in financial worth discovery, she must receive leave of court by showing a reasonable basis for recovery on her punitive damages claim. See DE 152. In its prior Order denying Defendants a protective order, the Court ruled that § 768.72(1) is a procedural modification to Federal Rule of Civil Procedure 8 and therefore inapplicable in a diversity action. See DE 186. Defendants now move for the Court to revisit its decision. In support thereof, Defendants cite to several non-binding cases from this District that have found § 768.72(1) contains a substantive element relevant to discovery and applied it in diversity actions.

The Court has carefully reviewed Defendants' thoroughly briefed Motion and the cases cited therein. While mindful of the cases in this District that have found § 768.72 applicable to diversity proceedings, the Court finds their reasoning unpersuasive. Rather, consistent with its prior Order (DE 186), the Court finds that § 768.72 is clearly a procedural alteration to Rule 8. The statute's full force and effect is contemplated at the pleading stage, and a second substantive step at discovery is unsupported by the statute's text. However, if the Court were to find that an inexplicable second step lay beneath the plain meaning of the text of § 768.72, the Court would be bound to analyze whether that statute and its requisite showing conflicted with Rule 26. For the reasons expressed more fully below, the Court finds that § 768.72 would directly conflict with Rule 26 and the procedures governing discovery in federal courts. Therefore, because Rule 26 violates neither the Rules Enabling Act nor the Constitution, the Court is bound to apply it and disregard § 768.72. Further, the Court finds that the application of Rule 26 would not result in an inequitable administration of the laws or encourage forum shopping by parties seeking punitive damages in Florida courts.

## II.

It is well established that when a federal district court exercises its diversity jurisdiction, the court is bound to apply state substantive law and federal procedural law. *Walker v. Armco Steel Corp.,* 446 U.S. 740, 745, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980); *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *see* Rules of Decision Act, 28 U.S.C. § 1652 (2006). The longstanding problem that has bewildered civil procedure students and federal judges alike is how to determine whether a particular law is substantive or procedural. The question has served as fodder for much

academic literature and vexed the federal courts for over a century. *Walker,* 446 U.S. at 744, 100 S.Ct. 1978 ("The question of whether state or federal law should apply ... has troubled this Court for many years.").[1]

The seminal case in addressing this question is *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Under *Hanna,* when both a state law and Federal Rule are potentially applicable, a district court must determine whether the state provision conflicts with the Federal Rule. *Vacation Break U.S.A., Inc. v. Marketing Response Group & Laser Co., Inc.,* 189 F.R.D. 474, 478 (M.D.Fla.1999) (citing *Hanna,* 380 U.S. at 471, 85 S.Ct. 1136). If there is a conflict, the court must apply the Federal Rule unless it is beyond the scope of the Rules Enabling Act or is unconstitutional. *Id.* (citing *Hanna,* 380 U.S. at 471, 85 S.Ct. 1136). As *Hanna* explained:

> When a situation is covered by one of the Federal Rules ... the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, [the Supreme] Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions.

*Hanna,* 380 U.S. at 471, 85 S.Ct. 1136 (citations omitted). Over time, *Hanna's* formulation of the situation being "covered by one of the Federal Rules" has been morphed into an inquiry of whether there is a "conflict" between the state and federal rule. *See e.g., Walker,* 446 U.S. at 749, 100 S.Ct. 1978; *Cohen v. Office Depot, Inc.,* 184 F.3d 1292, 1296–97 (11th Cir.

1999), *vacated in part on other grounds, Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir.2000). While precision in language is paramount to the craft of a jurist, the revised wording does little to alter the test. When the Federal Rule is said to cover the situation, there is a conflict; when it is not so broad as to cover the situation, no conflict will be found.

The holding of *Hanna* must be read in the context of its facts. There, an Ohio citizen filed a diversity action in Massachusetts federal court over injuries caused by a deceased Massachusetts citizen. *Hanna,* 380 U.S. at 461, 85 S.Ct. 1136. The named defendant, executor of the tortfeasor's estate and also a Massachusetts citizen, moved for summary judgment on the basis of improper service. The defendant cited a Massachusetts state law requiring in-hand service to the executor of an estate. In response, the plaintiff argued that the state law was inapplicable and that service was made in compliance with Federal Rule of Civil Procedure 4(d)(1), which permitted service by leaving copies of the complaint and summons at the executor's home with a person of suitable age and discretion residing there. *Id.* at 461–62, 85 S.Ct. 1136. Thus, the question before the Court was whether to apply the Federal Rule or the Massachusetts state law. In disposing of the question presented, the Court focused its analysis on whether the Federal Rule in question was broad enough to cover the situation at hand: whether service of process was properly made. Construing Rule 4 and its service requirements, the Court found that Rule 4 was "designed to control service of process in diversity actions." *Id.* at 463, 85 S.Ct. 1136. Thus, the Court found a conflict between the

---

1. For a short history of the long and winding road from *Erie* to *Walker,* see *Boggs v. Blue* *Diamond Coal Co.,* 497 F.Supp. 1105, 1108–17 (E.D.Ky.1980).

Massachusetts service rules and Rule 4(d)(1). Examining the limits of Rule 4 to determine its coverage in that situation, the Court stated that "the clash [with the state law requiring in-hand service] is unavoidable; Rule 4(d)(1) says—implicitly, but with unmistakable clarity—that in-hand service is not required in federal courts." *Id.* at 470, 85 S.Ct. 1136.

*Hanna* demands the enforcement of the Federal Rules unless they are not broad enough to cover a situation. In such a case, a relevant state law may be called upon to supply the rule of decision. Thus, put simply, the rule from *Hanna* is that when a Federal Rule covers a situation (there, service), but is silent on an action required by state law (there, in-hand service), the Federal Rule must control.

### III.

Defendants support the instant Motion (DE 190) by citing to several Southern District of Florida cases that found that the so-called discovery aspect of § 768.72(1) did not conflict with Rule 26. In the words of *Hanna*, those courts held Rule 26 does not cover the situation of financial worth discovery. *See, e.g.*, *State of Wis. Inv. Bd. v. Plantation Square Associates, Ltd.*, 761 F.Supp. 1569 (S.D.Fla. 1991); *Al–Site Corp. v. VSI Int'l, Inc.*, 842 F.Supp. 507 (S.D.Fla.1993); *Sanders v. Mayor's Jewelers, Inc.*, 942 F.Supp. 571 (S.D.Fla.1996). *Plantation Square* was the first case in the Southern District of Florida to set forth a reasoned analysis of § 768.72 under *Hanna* and *Erie*. Its analysis differentiates between the pleading and discovery aspects of § 768.72, and later cases explicitly adopt its reasoning. *E.g.*, *Al–Site*, 842 F.Supp. at 510 ("The Court agrees with *Plantation Square*'s conclusion and defers to that reasoning."); *Sand-*

*ers*, 942 F.Supp. at 576 n. 5 ("The Court adopts the reasoning of the *Al–Site* and *Plantation Square* courts with respect to the applicability of the discovery aspect of Section 768.72 in federal litigation."). Those courts found that because there is no direct conflict, Rule 26 does not cover the situation and § 768.72(1) is to be applied.

It is rare that a Federal Rule would not cover the situation of a discovery matter. "State law is of very little relevance to discovery in a federal action." 8 Wright, Miller & Marcus, *Federal Practice and Procedure:* Civil 2d § 2005 (1994). There are, of course, certain discrete instances when federal procedure specifically adopts state procedure: discovery in aid of execution may be governed by state law, and state law determines whether a privilege is applicable. Fed.R.Civ.P. 69(a); Fed.R.Evid. 501. However, "except for those two matters it is wholly settled that discovery in a federal court is governed only by [the Federal Rules of Civil Procedure] and that state discovery practices *are irrelevant.*" 8 Wright & Miller, *supra* (emphasis added) (citations omitted). Nevertheless, while the Federal Rules are described as being nearly absolute in their breadth of coverage, the question centers on whether there exists a conflict between state law and Federal Rule.

*Plantation Square* sought to reconcile the apparent incongruity between Rule 26 and § 768.72. Despite the illustrative authority on this issue, the Court finds the reasoning supplied by *Plantation Square* and its progeny unpersuasive. Properly understood, § 768.72(1) would create an unmistakable hurdle for the Parties in discovery and directly conflicts with the unobstructed discovery practice codified in Federal Rule of Civil Procedure 26. By

widening *Plantation Square*'s analysis to its proper scope, it is clear that there is a conflict between § 768.72 and Rule 26, and that Rule 26 fully contemplates parties seeking financial worth disclosure. Thus, because there is a conflict and Rule 26 covers the situation, the Court cannot apply § 768.72(1) and the showing mandated therein. Rather, the Court, as it should, applies Rule 26 to these proceedings and discovery issues that arise herein.

### A.

■ The crux of the issue raised by the instant Motion is this: Whether the Court must apply Florida Statutes § 768.72 and require a showing of reasonable grounds for entitlement to recovery before allowing Plaintiff to discover Defendants' financial worth information. The cardinal principal guiding the Court's analysis of any statute is to look at its plain language. *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir.2001). The statute provides as follows:

> In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages. The claimant may move to amend her or his complaint to assert a claim for punitive damages as allowed by the rules of civil procedure.... No discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted.

Fla. St. § 768.72(1) (2007). Courts have interpreted the text to contain two distinct parts: a pleading aspect and a discovery aspect. *See, e.g., Plantation Square*, 761 F.Supp. at 1572–81. *Plantation Square* reasoned that "the last sentence ... is of an entirely different nature than the rest of the statute and, for *Erie* purposes, must be analyzed separately as a rule of discovery." *Id.* at 1572–73. Other courts have adopted that reading. *E.g., Al–Site*, 842 F.Supp. at 509 (agreeing with *Plantation Square* that "there are two elements to § 768.72: a pleading element and a discovery element"); *Sanders*, 942 F.Supp. at 576 n. 5 (adopting the reasoning of *Al–Site* as to the "discovery aspect of Section 768.72").

The Court is skeptical that the plain meaning of the statute may be read to contain two separate aspects requiring a showing by a party seeking punitive damages. The first sentence of the statute requires a satisfactory showing to be made to the court before punitive damages may be pled in the complaint. The last sentence then clearly states that discovery of financial worth information may be had once a claim for punitive damages has been properly pled. Fla. St. § 768.72(1) ("No discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted."). The statute does not mandate that such discovery may commence only upon a second showing to the court. Rather, there is a single condition precedent before a plaintiff may plead punitive damages. Once leave of court is given upon a showing of a reasonable basis for entitlement, the complaint may be amended and plaintiff may proceed with discovery. Thus, there is no second hurdle after the pleading of punitive damages is allowed as *Plantation Square* holds. An initial showing is required to plead punitive damages; once leave has been given to amend the pleading, a litigant is free to go forward with his discovery requests. The Court's reading is supported by the fact that only one standard is used in the text: a "reasonable

basis for recovery." *Id.* If a second showing were required after pleading but before discovery may commence, it would simply be redundant with the first. The statute cannot be read to require a showing before pleading and then an additional showing before discovery is allowed. Upon obtaining leave to plead punitive damages, the question of whether discovery may commence has been answered.

The Eleventh Circuit held that, to the extent § 768.72(1) serves as a pleading statute, it is inapplicable in federal court. *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir.2000) (citing *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1295–99 (11th Cir.1999)). The *Cohen* court specifically held that § 768.72(1)'s requirement of a proffer to the district court before pleading punitive damages conflicted with Federal Rule of Civil Procedure 8(a)(3)'s requirement of a demand for relief to be contained, in the pleading. *Id.* Thus, in line with *Erie* and *Hanna*, Rule 8(a)(3) is applicable in diversity actions and litigants are to include claims for relief, including punitive damages, in their initial pleadings. They need not seek leave of court or make a showing before doing so.

In ruling that § 768.72 is not applicable to pleading in federal court, *Cohen* ruled that the statute's operative effect is inapplicable. In fairness to Defendants' argument, the Court notes that the *Cohen* court did not address whether there was a second showing, or a substantive discovery aspect, in § 768.72. In fact, the Eleventh Circuit had the opportunity but has not addressed the issue before the Court today of whether § 768.72(1) requires a proffer before discovery is allowed in federal court. *See Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1340 (11th Cir.2001)

(refraining from deciding the issue because the discovering party had made the showing that would have been required). However, the Court finds little reason, and no justification, to read into the statute an additional requirement of a showing before financial worth discovery may commence. The Court will not read *Porter*'s silence on the question as a restriction on the holding of *Cohen*. Rather, the Court notes that *Cohen* may have long ago started this Circuit toward the conclusion reached by the Court today. "To some degree, the functioning of all the procedures in the federal rules for broad joinder of parties and claims, discovery, liberal amendment, judicial management, and summary judgment are intertwined inextricably with the pleading philosophy embodied in Rule 8." 5 Wright & Miller, *Federal Practice and Procedure:* Civil 3d § 1202 (2004) (footnote omitted); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("This simplified notice pleading standard [embodied in Rule 8] relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.") (citation omitted).

The continuing validity of the reasoning given in *Plantation Square* in light of *Cohen* is premised on there being two distinct parts to § 768.72. The Court's prior Order (DE 186) denying a protective order to Defendants was based on the statute's text and the holding in *Cohen*, neither of which support a second showing for discovery. Absent the need for a second showing, the Court applied Rule 26, which allows a party, without any additional procedure, to discover information "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.

R.Civ.P. 26(b)(1).[2] While the Court is confident in its reasoning on this subject, for the benefit of the Parties and any reviewing court the Court will assume, *arguendo*, the dual aspect reading of the statute given by *Plantation Square* and its progeny and address whether under *Hanna* Rule 26 covers the situation.

## B.

The well reasoned decision rendered in *Plantation Square* is exhaustive in its analysis of § 768.72(1) under the *Erie* doctrine. However, assuming that § 768.72(1) would require a showing before discovery may commence in federal court, the Court's point of particular disagreement with *Plantation Square* is at the first step under *Hanna*. The *Plantation Square* decision framed the question in terms of whether there was any unavoidable conflict between § 768.72(1) and Rule 26. 761 F.Supp. at 1577. It noted that Rule 26 would allow financial worth discovery upon mere relevance, but that the standard of mere relevance was not an inflexible mandate. *Id.* at 1577–78 ("In apparent contravention of § 768.72, Rule 26 presumes access to discovery contemporaneous with a determination of relevancy. There is nothing in the Rules, however, to suggest this to be an inflexible mandate.") (footnotes omitted). Thus, it reasoned that Rule 26 did not *exclude* a showing to the court's satisfaction before allowing discovery, and so it *could* be read in harmony with § 768.72. *Plantation Square* but-

tressed its reasoning by looking to the disinterestedness of the Federal Rules and the substantial Florida state polices protected by § 768.72. *Id.* at 1578 ("Squared off against this potential flexibility of Rule 26 and the federal policies underlying it stand substantial state policies, of which the delay in discovery of financial worth proves an 'integral' part.") (footnote omitted). Thus, *Plantation Square* held that in a diversity action, parties seeking punitive damages must seek leave of court before commencing discovery of net worth. The Court finds that *Plantation Square* did not find a conflict between § 768.72 and the Federal Rules because it framed the issue too narrowly.

*Plantation Square*'s narrow framing of Rule 26 begged the question of whether, and effectively precluded a finding that, it conflicted with § 768.72(1). Under *Hanna*, the "first question must ... be whether the scope of the Federal Rule in fact is sufficiently broad to control the issue before the Court." *Walker*, 446 U.S. at 749–50, 100 S.Ct. 1978. *Plantation Square*, however, questioned whether there was any unavoidable conflict. 761 F.Supp. at 1577. The *Hanna* analysis does not begin with such a bias. "[T]he Federal Rules of Civil Procedure are [not] to be narrowly construed in order to avoid a 'direct collision' with state law. The Federal Rules should be given their plain meaning." *Walker*, 446 U.S. at 750 n. 9, 100 S.Ct. 1978. Put simply, *Plantation Square* misframed the issue by looking to whether a conflict could be avoided. Rather, the

---

**2.** As part of the relief she seeks, Plaintiff's prayer for punitive damages is part of her claim. *Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 694–96, 53 S.Ct. 736, 77 L.Ed. 1449 (1933); *Estate of Despain v. Avante Group, Inc.*, 900 So.2d 637, 641 (Fla.Dist.Ct.App.2005) ("Because the amount of an award may be pittance to a rich

man and ruination to a poor one, the goal of punishment must of necessity take into account the financial worth of the wrongdoer."). Thus, Rule 26 would allow discovery of information necessary to establish an entitlement to punitive damages. *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 151–52 (D.Kan.1990).

proper inquiry is to construe the Federal Rules to their proper extent and determine whether they cover the situation at hand. *Hanna,* 380 U.S. at 471, 85 S.Ct. 1136.

*Hanna* explained that the *Erie* rule requiring the enforcement of state law in federal court is to be invoked only in light of the conclusion that the federal rule in question is not broad enough to cover the matter at issue. *Hanna,* 380 U.S. at 470, 85 S.Ct. 1136. In other words, "[t]he *Erie* rule has never been invoked to void a Federal Rule." *Id.* The plain meaning of Rule 26 is that a party may have discovery of any matter relevant to his claim or defense, and that discovery requests should not be dishonored if they are reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1). *Plantation Square's* framing of the issue has two flaws: it minimized the breadth of Rule 26, and failed to consider that *"Erie* and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts *even though some of those rules will inevitably differ from comparable state rules."* *Hanna,* 380 U.S. at 473, 85 S.Ct. 1136 (emphasis added). Thus, *Plantation Square's* invocation of *Erie* partly voided Federal Rule 26 by looking to § 768.72 to supply the rule of decision in a discovery matter concerning financial worth. That court's adroit effort to merge § 768.72 with Rule 26 took up the wrong task. The Court must determine the question of whether the Federal Rules cover this situation, not whether state law may be grafted into a Federal Rule.

## IV.

As noted above, the proper inquiry under *Hanna* is whether the Federal Rules are broad enough to cover this situation, or whether the Court must require the showing mandated by § 768.72 before allowing discovery. It is the nature of the federal discovery rules to reveal all relevant information and quicken the process for obtaining it. *United States v. Procter & Gamble, Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958) ("[The discovery rules] together with pretrial procedures make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.") (citation omitted). The Federal Rules were adopted to end the practice of treating litigation as "a battle of wits rather than a search for the truth," and to put an end to the "sporting theory of justice." *See* 8 Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d* § 2001 (1994). In fact, *Plantation Square* correctly recognized that the "presumption [behind Rule 26] of contemporaneous access [to relevant information upon pleading] seems to be driven, rather, by general notions of efficiency in the litigation process." *Plantation Square,* 761 F.Supp. at 1578.

Section 768.72(1) has the opposite effect. It operates as a moat that discovering parties must find their way across before they are allowed access to the keep. As *Plantation Square* noted, the statute is a codification of Florida's desire to protect its citizens from harassment. *Id.* at 1578–79. This procedural impediment prevents all but the non-frivolous claimants from engaging in financial worth discovery. Such an obstruction is a completely defensible, and perhaps wise, decision of the Florida legislature. *New State Ice Co. v. Liebmann,* 285 U.S. 262, 311, 52 S.Ct. 371, 76 L.Ed. 747 (Brandeis, J., dissenting) ("It is one of the happy incidents of the federal system that a single courageous State

may, if its citizens choose, serve as a laboratory; and try novel social and economic experiments without the risk to the rest of the country.") While Florida is free to formulate its own rules for discovery, to the extent they conflict with the uniform rules of federal procedure they must be disregarded. If applied in federal court, § 768.72(1) would place a governor on Rule 26 where Congress has not seen fit to place one.

### A.

■ In seeking to determine whether the federal rules cover the situation, the Court must consider the proper scope of the federal discovery rules. As housekeeping rules, the Federal Rules of Civil Procedure provide the manner in which federal litigation is to be conducted. Chief among the characteristics of federal litigation is the principle, with few exceptions, that a case is to be tried as a single unit and not broken into piecemeal trials. *See* 28 U.S.C. § 1291 (2006); *Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 693–95, 53 S.Ct. 736, 77 L.Ed. 1449 (1933) (noting that interlocutory judgments are unknown in jury trials and the "answer being general, the case according to common-law practice must be tried as a unit and not broken into parts"); *see Hirshhorn v. Mine Safety Appliances*, 8 F.R.D. 11, 23 (W.D.Pa.1948) (noting that trying all issues at once avoids waste and expense and that "plaintiff will not request a date for trial until his case is properly prepared, and the defendants always have a right to be heard, if the date requested by the plaintiff is not convenient"). To effectuate this deliberate choice on the part of Congress in favor of once-and-for-all litigation as to all issues, the Federal Rules allow for broad discovery. Fed.

R.Civ.P. 26(b)(1). Such wide access by all parties to matters touching all issues to be tried allows each side to prepare its case thoroughly and try it efficiently. In stark contrast to such liberal discovery, § 768.72 would stem the procedure until a ruling may be given by the Court. The statute would narrow the scope of permissible discovery until Plaintiff could compile enough information to point to evidence in the record or make a proffer of a reasonable entitlement to recovery. This cannot be reconciled with the liberality of Rule 26.

A second and equally important quality of the federal discovery rules is that they contemplate limited court involvement. *See, e.g.,* Fed.R.Civ.P. 26(f) (requiring parties to confer as soon as practicable to consider the nature and basis of claims and defenses and the possibilities for promptly settling); Fed.R.Civ.P. 37(a)(5)(A) (requiring the court to impose a sanction against a party or attorney who necessitates the court's involvement in a discovery dispute without substantial justification). To the contrary, § 768.72 would prevent financial worth discovery absent a proffer to the court establishing the reasonableness of recovery. In contrast to the laissez faire approach in federal court, under § 768.72 court intervention is necessary before financial worth discovery is to begin at all. The *Plantation Square* reasoning applying § 768.72 in federal court vitiates the litigant-driven procedure of the federal discovery rules in light of the state statute's policy-driven requirement of a showing and leave of court.

The structure of liberal discovery conducted by the parties, and only chaperoned by the court, is the explicit policy of litigation in the federal courts and is clearly mandated by the Federal Rules. The Court "cannot allow state court rulings to

influence what [it] consider[s] to be the proper interpretation of the federal rules concerning discovery." *Sharon Steel Corp. v. Travelers Indemnity Co.*, 26 F.R.D. 113, 116 (N.D.Ohio 1960) (noting also that it "may be that Ohio does not afford the liberality in discovery that we deem appropriate under federal practice, but our jurisdiction cannot be impinged upon for the sake of conforming with state court decisions"). When a right is enforceable in federal as well as state court, such as Plaintiff's fraud claim at issue here, "the forms and mode of enforcing the right may at times, naturally enough, vary because the two judicial systems are not identic." *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 108, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). When there is a variance between the federal and state systems governing the mode of enforcement of rights, federal courts normally and properly respond by enforcing the federal, not state, procedures.[3] As *Hanna* noted, "[t]o hold that a Federal Rule of Civil Procedure must

cease to function whenever it alters *the mode of enforcing* state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power under the Rules Enabling Act." *Hanna*, 380 U.S. at 473–74, 85 S.Ct. 1136 (emphasis added).

## B.

Certain policies that animate Florida state court litigation differ from those underlying federal litigation. The statute in question clearly is meant to enshrine a right "not to be subjected to a punitive damages claim and ensuing financial worth discovery" without leave of court. *Simeon, Inc. v. Cox*, 671 So.2d 158, 160 (Fla.1996) (citing *Globe Newspaper Co. v. King*, 658 So.2d 518, 519 (Fla.1995)). This right is so important to the people of the State of Florida that it is incorporated into Florida civil practice by § 768.72.[4] Indeed, *Plantation Square* relied heavily on the

---

**3.** The Court has read and considered decisions of courts in this District and elsewhere applying similar state laws in federal diversity actions. While disagreement is to be expected, there is certainly nothing novel in the result the Court reaches today. *See, e.g., Everitt v. Brezzel*, 750 F.Supp. 1063, 1065–66 (D.Colo.1990) (refusing to apply in federal court a Colorado Supreme Court decision requiring a showing of good cause before discovery of certain relevant non-privileged information may be had); *Am. Benefit Life Ins. Co. v. Ille*, 87 F.R.D. 540, 541–42 (W.D.Okla. 1978) (refusing to apply in federal court an Oklahoma state law requiring a prima facie showing of entitlement to punitive damages before net worth discovery may be had); *Dixon v. 80 Pine Street Corp.*, 516 F.2d 1278, 1280–81 (2d Cir.1975) (refusing to apply in federal court a New York civil procedure rule requiring a showing to be made before certain discovery may be had); *Vollert v. Summa Corp.*, 389 F.Supp. 1348, 1351 (D.Haw.1975) (refusing to delay discovery of financial information until after plaintiff proved his case as

to liability so that plaintiff may have all information needed to prepare his entire case); *Keller v. Orion Ins. Co., Ltd.*, 285 F.Supp. 906, 907–08 (D.Minn.1968) (refusing to apply in federal court a Minnesota civil procedure rule requiring a showing of good cause before a certain class of person may be deposed).

**4.** As an aside, the Court notes that Defendants are citizens of Brazil and contracted to build a yacht in Brazil for Plaintiff, a citizen of Georgia. As foreign citizens, Defendants do not often look to the Florida legislature to protect their rights, nor does Florida have a very high interest in protecting their financial worth information from discovery. *Cf. Tananta v. Cruise Ships Catering and Services Int'l, N.V.*, 909 So.2d 874, 887–88 (Fla.Dist. Ct.App.2004) (noting that Florida has very little interest in making whole foreign nationals injured in the Mediterranean Sea while aboard non-U.S. vessels and treated by foreign doctors).

importance of § 768.72. *Plantation Square*, 761 F.Supp. at 1579–79 (noting the "substantial State policies, of which the delay in discovery of financial worth proves an 'integral' part" and "the lack of a strong federal interest in demanding immediate access to financial worth discovery"). When analyzing the question at hand, the Court cannot be motivated by either the policies underlying the differing rules or the importance of one versus the relative unimportance of the other. *Sibbach v. Wilson & Co. Inc.*, 312 U.S. 1, 13, 61 S.Ct. 422, 85 L.Ed. 479 (1941) ("If we were to adopt the suggested criterion of the importance of the alleged right we should invite endless litigation and confusion worse confounded."); *see Hanna*, 380 U.S. at 469 n. 9, 85 S.Ct. 1136 (cautioning against an improper emphasis on the importance of a state law). The Court must limit its focus to the procedures of the federal and state systems, determine whether they conflict, and if so, faithfully apply the Federal Rules.

Contrasted with Florida civil procedure, as evidenced by § 768.72(1), the procedure for discovery in federal court, as evidenced by Rule 26(b)(1), is aimed at the broad and liberal discovery of all relevant facts to bring everything to light before the trier of fact. *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir.2003) ("The deposition-discovery regime set out by the Federal Rules of Civil Procedure is an extremely permissive one to which courts have long accorded a broad and liberal treatment to effectuate their purpose that civil trials in the federal courts need not be carried on in the dark.") (in-

ternal quotation marks and citations omitted); *see also* Fed.R.Civ.P. 1 ("[These Rules] shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."). By their overall structure, the Federal Rules promote efficiency in decision, frequency in settlement, and lack of surprise at trial. Thus, rather than taking the narrow view, that of *Plantation Square*, of a possible conflict between Florida's requirement of an evidentiary showing before financial worth discovery may ensue and the absence of one in federal rules, the Court compares the overall blueprint of liberal discovery evidenced by Rule 26 with the fragmentary procedure for discovery with court intervention mandated by § 768.72.[5] Framed correctly, the conflict is obvious.

The *Plantation Square* court held that delaying disclosure of a defendant's financial worth information until a later stage in pretrial litigation did "nothing to interfere with *the purposes of such discovery* under the Federal Rules." *Plantation Square*, 761 F.Supp. at 1578 (emphasis added). In so avoiding the interference with the purposes of discovery in order to enforce state rights, the court there held that a plaintiff, upon the showing required by the statute, will still "have in hand evidence of the defendant's financial condition at the time it becomes necessary for the factfinder to determine punitive liability." *Id.* However, it is the state procedure of delay in the production of financial worth information, regardless of whether it interferes with the "purposes" of federal discovery, that conflicts precisely with the non-delayed discovery "procedure" of the Federal

---

5. The Court notes that even the more narrow comparison between a showing required by the Florida statute and silence in Rule 26 mirrors the comparison in *Hanna*. In that case a state law required in-hand service but Rule 4 did not. Regarding the situation, the Supreme Court held that the clash was "unavoidable" and that the difference in procedure was stated with "unmistakable clarity." *Hanna*, 380 U.S. at 470, 85 S.Ct. 1136.

Rules. That is, open and liberal discovery *ab initio* must be seen as conflicting with a proffer by Plaintiff, consideration and decision of the Court, and *only then* disclosure of information by Defendants.

The Federal Rules are not wanting for procedures to protect parties from vexatious discovery requests. The Rules prevent the discovery of certain information upon a showing of harm to the disclosing party. *See, e.g.,* Fed.R.Civ.P. 26(c)(1) (allowing a party to whom a discovery request is directed to obtain a protective order upon a showing that good cause exists to issue the order to prevent "annoyance, embarrassment, oppression, or undue burden or expense"). Under the Federal Rules, the showing required to *prevent* discovery is the inverse of the showing required by § 768.72 to *engage in* discovery. The absence of a default hurdle written into Rule 26(b) for protection of financial worth information is part and parcel of the federal procedure of liberal discovery.

Therefore, the Court finds a conflict between the showing requirement in § 768.72(1) and the Federal Rules' absence of such a requirement. Thus, Rule 26 covers this situation. Because this "situation is covered by one of the Federal Rules ... the [C]ourt has been instructed to apply the Federal Rule." *Hanna,* 380 U.S. at 471, 85 S.Ct. 1136 (citations omitted). Accordingly, Rule 26(b)(1) will be applied unless it violates the Rules Enabling Act or the Constitution. *Id.*

## V.

■ The Rules Enabling Act gives the Supreme Court the power "to prescribe general rules of practice and procedure" in the federal courts. 28 U.S.C. § 2072(a) (2006). However, "[s]uch rules shall not abridge, enlarge or modify any substantive right." *Id.* § 2072(b). Therefore, the Court cannot apply Rule 26, and thus allow Plaintiff to obtain the discovery she seeks without any prior showing of a reasonable basis for recovery, if such a ruling would abridge or modify a substantive right of Defendants. Rule 26, however, like all the Federal Rules, enjoys a presumption of validity under the Rules Enabling Act. *Burlington Northern R.R. Co. v. Woods,* 480 U.S. 1, 6, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987) ("Moreover, the study and approval given each proposed Rule by the Advisory Committee, the Judicial Conference, and this Court, and the statutory requirement that the Rule be reported to Congress for a period of review before taking effect ... give the Rules presumptive validity under both the constitutional and statutory constraints.").

■ Defendants have done nothing to rebut the presumption of validity Rule 26 enjoys under the Enabling Act. Defendants' arguments that § 768.72(1) embodies a substantive right do not apply the proper test. Defendants rely on Florida's characterization that the showing requirement found in § 768.72 grants a substantive right. The characterization of the statute as a substantive right by Florida state courts, along with the importance they place on that right, cannot control the Court's determination of whether Rule 26 abridges or modifies any substantive right. *Sibbach v. Wilson & Co. Inc.,* 312 U.S. at 13–14, 61 S.Ct. 422 (rejecting "important" as the definition of "substantive"). Rather, the test for whether a rule is "procedural," as that term is used in the Rules Enabling Act, is simply "whether a rule really regulates procedure,—the judicial process for enforcing rights and duties

recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Id.* at 14, 61 S.Ct. 422.

Rule 26 allows discovery of all non-privileged information relevant to a claim or defense. Fed.R.Civ.P. 26(b)(1). As discussed above, in order to properly prepare and prove his case to the trier of fact, a party must be able to obtain discovery, including as to the issue of punitive damages. *Sinclair Refining Co.*, 289 U.S. at 694–96, 53 S.Ct. 736. Rule 26 would therefore allow discovery of financial worth information upon a showing of relevance. That Rule and its lack of a showing requirement before financial worth discovery may be had clearly acts as a tool to help Plaintiff make out her case for punitive damages. Thus, the Rule is part of the "process for enforcing rights and duties." *Sibbach*, 312 U.S. at 14, 61 S.Ct. 422. Therefore, Rule 26 does not violate the Rules Enabling Act.[6]

The Court's departure from a tradition of applying § 768.72 to discovery practice in the Southern District of Florida is not taken lightly. However, the Court finds that the mere recognition that Florida defendants always enjoy the protection of an additional procedure before net worth discovery may be had in state courts cannot be translated to a rule that changes the landscape of federal litigation.

Undoubtedly most alterations of the rules of practice and procedure may and

often do affect the rights of litigants. Congress' prohibition of any alteration of substantive rights of litigants was obviously not addressed to such incidental effects as necessarily attend the adoption of the prescribed new rules of procedure upon the rights of litigants who, agreeably to rules of practice and procedure, have been brought before a court authorized to determine their rights.

*Mississippi Publ'g Corp. v. Murphree*, 326 U.S. 438, 445, 66 S.Ct. 242, 90 L.Ed. 185 (1946) (citing *Sibbach*, 312 U.S. at 11–14, 61 S.Ct. 422). Moreover, uniformity in federal practice is the aim and felicitous result of a unified judicial system. *Lumbermen's Mut. Cas. Co. v. Wright* 322 F.2d 759, 764 (5th Cir.1963) ("One of the shaping purposes of the Federal Rules is to bring about uniformity in the federal courts by getting away from local rules."); *Hanna*, 380 U.S. at 463, 85 S.Ct. 1136 ("Because of the threat to the goal of uniformity of federal procedure posed by the decision below, we granted certiorari.") (footnote omitted). Thus, Rule 26, and not specific state practices, must be applied to discovery in the federal courts.

In as much as Rule 26 is part of the judicial process of enforcing rights and duties of the Parties, it does nothing to abridge or modify Defendants' rights, nor enlarge Plaintiff's. *Sibbach*, 312 U.S. at 14, 61 S.Ct. 422. Therefore, the Court finds that the Rule comports with the congressional grant of authority in the Rules Enabling Act and is thus valid thereunder.

---

**6.** Recognizing that the *Sibbach* test is circular in its terms, the Honorable William O. Bertelsman, sitting in the Eastern District of Kentucky, reasserted the test in this way: "[A] substantive rule [is] one which, if all the facts were stipulated, would be meaningful in analyzing the rights and liabilities of parties to a dispute if they were to settle on it on the day of filing suit...." *Boggs v. Blue Diamond Coal* *Co.*, 497 F.Supp. 1105, 1121 (E.D.Ky.1980). The question of whether or not Plaintiff would have to make a showing before discovering evidence relevant to her punitive damages claim is clearly not helpful in analyzing the rights and liabilities of the Parties, including the merit of the punitive damages claim itself. Thus, Rule 26 is procedural and does not violate the Rules Enabling Act.

██ The issue of whether Rule 26 violates the Constitution can be summarily dismissed. In addition to the presumption of constitutional validity enjoyed by the Federal Rules noted above, *Woods,* 480 U.S. at 6, 107 S.Ct. 967, because the Court has found the issue of discovery without leave of court to be procedural, the Court similarly finds that Rule 26 does not violate the Constitution. *Hanna,* 380 U.S. at 472, 85 S.Ct. 1136 ("[T]he constitutional provision for a federal court system ... carries with it congressional power to make rules governing the practice and pleading in those courts, which in turn includes a power to regulate matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either."); *Woods,* 480 U.S. at 5, 107 S.Ct. 967 (citing *Hanna,* 380 U.S. at 472, 85 S.Ct. 1136).

## VI.

In the alternative, and for the benefit of the Parties and any reviewing court, the Court will assume that Rule 26 is not broad enough to cover the situation of Plaintiff's discovery requests. Therefore, under *Hanna,* the question becomes whether application of Rule 26 would violate the twin aims of *Erie*: preventing both the inequitable administration of the laws and forum shopping. *Hanna,* 380 U.S. at 471, 85 S.Ct. 1136.

*Plantation Square* held that failing to apply § 768.72 would not result in an inequitable administration of the laws. 761 F.Supp. at 1579. However, finding that § 768.72 did not conflict with Rule 26, *Plantation Square* determined that the state statute must be applied because refusing to do so would result in forum shopping by altering the character of the litiga-

tion. *Id.* The Court will address each in turn.

The Court agrees with *Plantation Square*'s assessment of the first issue. "Failure to adopt the State discovery practice would not lead to an inequitable administration of the laws. It is difficult—if not impossible—to imagine how pre-trial production of evidence of financial worth sooner, rather than later, would change the result of any given litigation." *Plantation Square,* 761 F.Supp. at 1579.

*Plantation Square* went on to find that failing to enforce § 768.72 in diversity actions would encourage forum shopping. The Court disagrees. "The *Erie* rule is rooted in part in a realization that it would be unfair for the character or result of a litigation materially to differ because the suit had been brought in a federal court." *Hanna,* 380 U.S. at 467, 85 S.Ct. 1136. Thus, the *Erie* doctrine is aimed at avoiding discrimination against in-state defendants and ensuring equal protection in the exercise of jurisdiction. "Not only are nonsubstantial, or trivial, variations not likely to raise the sort of equal protection problems which troubled the Court in *Erie*; they are also unlikely to influence the choice of a forum." *Id.* at 468, 85 S.Ct. 1136. As in *Hanna,* where the mode of service was at issue, the procedure for discovery in the instant action has little impact on the character of the litigation. "[I]t is difficult to argue that permitting [Plaintiff to have net worth discovery without leave of court] alters the mode of enforcement of state-created rights in a fashion sufficiently 'substantial' to raise the sort of equal protection problems to which the *Erie* opinion alluded." *Id.* at 469, 85 S.Ct. 1136.

██ Plaintiff has stated a claim for fraud in the inducement and seeks punitive

damages as part of her claim. She seeks to discover Defendants' financial worth information in support of her claim.

> To hold that the plaintiff in an action at law may have discovery of damages is not to say that the remedy will be granted as of course, or that protection will not be given to his adversary against impertinent intrusion.... The court may decline to open the defendant's records to the scrutiny of a competitor posing as a suitor, if the suit has been begun without probable cause or as an instrument of malice. It is all a matter of discretion.

*Sinclair Refining,* 289 U.S. at 696–97, 53 S.Ct. 736. There is no indication in the record that Plaintiff is here seeking to abuse the federal courts for an improper purpose. While Defendants' instant Motion (DE 190) vigorously attacks the merit of Plaintiff's punitive damages claim, it does not posit that Plaintiff seeks to obtain the discovery at issue for an improper purpose such as would violate *Erie's* goal of equal protection. Without passing on the merit of Defendants' arguments, the Court finds no danger in allowing the instant discovery to take place. The protections already afforded in the federal discovery rules are in place to defend against "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R.Civ.P. 26(c)(1). Thus, if the discovery of this information would lead to any one of these, Defendants would be entitled to a protective order under Rule 26.

Moreover, the requirement of establishing a reasonable basis for recovery found in § 768.72(1) is no more a defense to a frivolous claim than a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6). *Compare* Fla. St. § 768.72(1) ("[N]o claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages."), *with Bell Atlantic Corp. v. Twombly,* 550 U.S. ——, 127 S.Ct. 1955, 1965–66, 167 L.Ed.2d 929 (2007) (holding that requiring a complaint to properly state a claim for relief requires enough facts to demonstrate plausible grounds for recovery). Thus, Defendants' reliance on § 768.72(1) for a safe harbor would displace and add to the Federal Rules.[7] This is not the aim of *Erie. Hanna,* 380 U.S. at 470, 85 S.Ct. 1136 ("The *Erie* rule has never been invoked to void a Federal Rule.").

Thus, the Court finds that a plaintiff would not seek the federal forum simply to avoid application of § 768.72(1). Therefore, even if Rule 26 were not broad enough to cover this situation, and thus did not conflict with § 768.72(1), the Court finds that application of Rule 26(b)(1) to the instant discovery requests would not result in an inequitable administration of the laws or encourage forum shopping. Rule 26 will be applied.

## VII.

In conclusion, the Court finds that Florida Statutes § 768.72(1) is a pleading statute that has no effect on discovery practice in federal court. If application in federal court would require a showing before net worth discovery is allowed, the Court finds

---

**7.** By prior Order (DE 108), the Court allowed Plaintiff to amend her complaint to state with particularly the allegations giving rise to her fraud claim. Thus, Defendants have also had the protection of Federal Rule of Civil Procedure 9(b), which requires the circumstances constituting fraud to be alleged with particularity.

that there is a conflict between Federal Rule of Civil Procedure 26(b)(1) and the so-called discovery aspect of § 768.72(1). Thus, the Court finds that Rule 26 covers the situation of whether net worth discovery may be sought without prior leave of court. For the reasons already expressed, the Court also finds that Rule 26(b)(1) violates neither the Rules Enabling Act nor the Constitution. In the alternative, the Court finds that application of Rule 26 and not § 768.72(1) will lead neither to an inequitable administration of the laws nor to forum shopping as contemplated by *Erie*.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** that Defendants' Motion To Reconsider Or Stay The Effect Of The Court's Order Allowing Financial Worth Discovery (DE 190) be and the same is hereby **DENIED**.